**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Ezra L. Hartsfield,<br><br>Plaintiff,<br><br>v.<br><br>Danielle Alvarez, et al.,<br><br>Defendants. | No. 22 CV 02380<br><br>Honorable Nancy L. Maldonado |

## Memorandum Opinion and Order

Pro Se Plaintiff Ezra L. Hartsfield initiated this action against a number of defendants for alleged violations of his civil rights in connection with a state court foreclosure proceeding. Pending before the Court now is a motion by one of those named defendants, Shellpoint Mortgage Service ("Shellpoint"), to dismiss Hartsfield's operative Amended Complaint. (Dkt. 23.)[1] For the reasons stated in this Opinion and Order, the Court grants Shellpoint's motion. In short, the Court finds that Hartsfield's claims against all named defendants, including those that have not yet appeared, are barred under the *Rooker-Feldman* doctrine. The case is therefore dismissed without prejudice for lack of subject matter jurisdiction.

## Background

On May 6, 2022, Hartsfield initiated this lawsuit pro se by filing a Notice of Removal that purported to remove a state foreclosure proceeding—Case No. 19 CH 305 pending in the Circuit Court of Will County, Illinois—to this federal District Court. (Dkts. 1, 6.) The case was thus originally docketed as a removal, with Hartsfield as the named defendant and Citibank, N.A., the

[1] In citations to the docket, page numbers are taken from the CM/ECF headers.

original plaintiff in the underlying state foreclosure proceeding, as the named plaintiff. (*See id.*) A few days later on May 9, 2022, Hartsfield filed an Amended Complaint, using the District's civil rights complaint form, listing himself as plaintiff and bringing civil rights claims under 42 U.S.C. § 1983 against several named defendants: Danielle Alvarez; Kristy Herrera; McCalla, Raymer, Liebert and Pierce, LLC, ("McCalla"); and Shellpoint (collectively, "Defendants"). (Dkt. 9.) Based on the filing of the Amended Complaint, it appeared to the Court that Hartsfield was not in truth seeking to remove his state court proceeding, but was seeking to initiate a new federal lawsuit with independent claims against parties other than Citibank, N.A. The Court therefore directed the Clerk to correct the docket to reflect Hartsfield as the named plaintiff, and Alvarez, Herrera, McCalla, and ShellPoint as the named defendants, and to issue summons. (Dkt. 14.)

In the Amended Complaint, Hartsfield generally alleges that Defendants conspired to violate his due process rights in the state court foreclosure proceeding by committing fraud, forgery and wrongful foreclosure. (*See* Dkt. 9 at 10.)[2] Hartsfield requests that the Court grant a stay against the foreclosure and any eviction and proceed with his complaint for a jury trial on his civil rights claims. (Dkt. 9 at 4–6.) The Amended Complaint also attaches roughly 100 pages of exhibits, primarily consisting of various state court filings from the underlying foreclosure proceeding. Included with the exhibits is a separate document entitled "Restraining Order Injunction to Block State Court from Moving Forward with the Foreclosure and Eviction," in which, as the title suggests, Hartsfield expands on his request in the Amended Complaint that the Court block the state court, the bank, and the property management company from all foreclosure and eviction

[2] For the purposes of the instant motion, the Court assumes Hartsfield's well-pled allegations in the Amended Complaint to be true. *See, e.g., Anicich v. Home Depot U.S.A., Inc*., 852 F.3d 643, 648 (7th Cir. 2017). The Court may also consider facts in the exhibits attached to the Amended Complaint, including the state court filings, as they are matters of public record and incorporated into the complaint under Federal Rule of Civil Procedure Rule 10(c). *See Northern Indiana Gun & Outdoor Shows, Inc . v. City of South Bend*, 163 F.3d 449, 452–53 (7th Cir.1998)

efforts. (*Id*. at 12.) Specifically, the "Restraining Order Injunction" requests that the Court "vacate [the] foreclosure judgment against his real property with prejudice and vacate the eviction judgment." (*Id.* at 21.)

As to the specifics of Defendants' allegedly wrongful acts, Hartsfield's Amended Complaint is somewhat difficult to parse due to its lack of detailed allegations. The Amended Complaint does not identify or describe any of the Defendants' particular involvement in the underlying foreclosure proceedings, nor does it contain an any specific allegations explaining how it is that Defendants committed fraud, forgery, or otherwise violated Hartsfield's due process rights in the proceedings. The "Restraining Order Injunction" attached to the Amended Complaint does shed some further light on the factual basis of Hartsfield's claims, however. Buried in the attachment, Hartsfield claims that the promissory note used to initiate the state foreclosure proceedings was fraudulent. (Dkt. 9 at 19.) Hartsfield thus appears to be claiming that the bank and the debt collector who initiated the foreclosure and eviction proceedings in state court were operating fraudulently based on a forged document, and therefore the state court did not have jurisdiction or authority to act. (*Id.*) Neither the Amended Complaint nor the Restraining Order Injunction ties this alleged forgery of the promissory note to any particular defendant. As far as the Court can tell, based on its own review of the state court filings attached as exhibits, Defendants Alvarez and Herrera appear to be attorneys at the law firm McCalla, the firm that represented the plaintiff mortgage-holder in the underlying state foreclosure proceeding. ShellPoint's involvement is less clear, however, as it does not appear to be specifically mentioned in any of the state court filings.

Based on its initial review of the Amended Complaint, the Court cautioned Hartsfield that it appeared he was complaining about a state court judgment that might not be within the Court's

jurisdiction to review under the *Rooker-Feldman* doctrine. (Dkt. 11.) Nonetheless, the Court determined it was appropriate for Hartsfield to serve the Amended Complaint and for Defendants to raise any *Rooker-Feldman* argument on their own. (*Id.*). Summons were subsequently issued for service by the U.S. Marshals Service. As of the date of this order, the docket indicates that all defendants have been served, though only Shellpoint has appeared and responded to the Amended Complaint.

After summons were issued, but before service was effected, Hartsfield submitted a flurry of additional filings, including the same "Restraining Order Injunction" that was attached to the Amended Complaint. (Dkt. 16.)[3] The filing, which the Court construed as a motion for a temporary restraining order, requested that the Court immediately vacate the state court judgment of foreclosure and halt all eviction proceedings pending his instant federal case. (*Id.*) The Court subsequently denied the motion in an order on December 1, 2023, finding that the Court had no authority to order immediate injunctive relief overturning the state court's judgment, in light of the *Rooker-Feldman* doctrine and the Anti-Injunction Act, 28 U.S.C. § 2283. (Dkt. 26 at 3–4.)

Separately, on November 23, 2022, Defendant Shellpoint appeared and responded to the Amended Complaint with the instant motion to dismiss, which the Court turns to next. (Dkt. 23.)

## Legal Standards

Shellpoint moves to dismiss the Amended Complaint under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When, as here, a defendant makes a facial challenge to the sufficiency of the allegations regarding subject matter jurisdiction, the Court must

[3] Hartsfield's other filings indicated he was seeking to remove a separate underlying state court case, as well as attempting to add additional claims and defendants in this action. The Court denied Hartsfield's requests as procedurally improper. (*See* Dkt. 18.)

accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Center for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). However, "a plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Burwell*, 770 F.3d at 588–89.

A motion to dismiss under Rule 12(b)(6), on the other hand, challenges the sufficiency of the claims raised in the complaint, and whether they state any claim for relief. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. K*ubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). The Court need not, however, accept conclusory allegations, or allegations that contain only legal conclusions. *See, e.g., Dix v. Edelman Fin. Servs*., LLC, 978 F.3d 507, 513 (7th Cir. 2020) (citations omitted). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Discussion**

Shellpoint argues that Hartsfield's complaint must be dismissed for two independent reasons: (1) the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine, because Hartsfield's claims all arise from, and are targeted at, a state court judgment; and (2) the Amended Complaint otherwise fails to state any legal claim for relief against Shellpoint in particular. As explained further below, the Court agrees with Shellpoint that Hartsfield's claims

must be dismissed for lack of jurisdiction under *Rooker-Feldman*. The Court therefore need not address Shellpoint's second argument for dismissal.

As the Court has explained in multiple prior orders, including the order denying Hartsfield's request for a temporary restraining order, the *Rooker-Feldman* doctrine provides a jurisdictional bar that prevents lower federal courts from reviewing judgments entered by state courts. *See Andrade v. City of Hammond, Indiana*, 9 F.4th 947, 948 (7th Cir. 2021) ("Appellate review of state-court judgments is reserved exclusively to the United States Supreme Court."); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that *Rooker-Feldman* applies to bar cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"); *see also Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399 (7th Cir. 2023) ("The Rooker-Feldman doctrine is an important foundation for the division of power between federal and state courts."). The doctrine applies to federal claims that "directly challenge a state court judgment or are inextricably intertwined with one." *Hadzi-Tanovic*, 62 F.4th at 399 (internal quotation marks omitted). In order to determine whether a plaintiff's claims are inextricably intertwined with a state court judgment, the court looks to whether the plaintiff's alleged injuries were "caused by the state court judgment" or were truly "independent" of the judgment. *See id.* (citation omitted). If the court determines that the plaintiff is directly challenging a state court judgment, or his claims are inextricably intertwined with a state court judgment, the *Rooker-Feldman* doctrine applies to remove the district court's subject matter jurisdiction, unless the plaintiff shows that they did not have "a reasonable opportunity to raise the [federal] issue in state court proceedings." *Id*. (citing *Jakupovic v. Curran,* 850 F.3d 898, 902 (7th Cir. 2017)).

Here, Hartsfield's Amended Complaint expressly asks that the Court enjoin the state court's foreclosure judgment and stay any eviction. (*See* Dkt. 9 at 4.) Regardless of the merits of Hartsfield's claims of forgery, fraud, or violation of his due process rights in the foreclosure proceedings, the specific injunctive relief he seeks to halt the state court foreclosure would necessarily require this Court to set aside that judgment, which is something the Court cannot do under *Rooker-Feldman*. *See generally Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004) ("Claims that directly seek to set aside a state court judgment are de facto appeals and are barred without additional inquiry."); *see also Banister v. S. Holland Police Dep't,* No. 16 C 10445, 2017 WL 2813660, at *4 (N.D. Ill. June 29, 2017) (noting that "Rooker-Feldman has been frequently applied to claims stemming from a state's foreclosure judgment") (collecting cases). Indeed, *Rooker-Feldman* applies to bar this Court from hearing Hartsfield's claims challenging his foreclosure even if Hartsfield were correct that the state court judgment was the result of a fraudulent promissory note. *See, e.g., Hermann v. Dunn Cnty.*, 761 F. App'x 647, 650 (7th Cir. 2019) ("Even if, as the [plaintiffs] allege, the state judgment that harmed them arose from fraud, *Rooker-Feldman* bars federal district-court jurisdiction over any claim about a state judgment that allegedly caused injuries."). In short, no matter how the state court reached its final judgment, this lower federal court has no authority to set it aside. Instead, only the Illinois appellate courts or U.S. Supreme Court may reverse the state court's decision.

To the extent that Hartsfield seeks monetary relief, as opposed to direct vacatur of the foreclosure, this does not save his claims from application of *Rooker-Feldman.* As noted above, claims that indirectly challenge a state court judgment are nonetheless barred if they are inextricably intertwined with a state court judgment, that is, the claim is based on injures that were caused by the state court judgment. Hartsfield's claimed injuries here all arise from the foreclosure

and eviction ordered by the state court. If this Court were to find that Hartsfield is entitled to damages for a violation of his due process rights in those state proceedings, or that he is entitled to damages based on a forged promissory note, it would necessarily call into question the state court judgment. This the Court cannot do, because an indirect attack on a state court judgment is forbidden under *Rooker-Feldman*, even if Hartsfield did not directly seek reversal of the foreclosure itself. *See Hadzi-Tanovic*, 62 F.4th at 401 (citing *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 391 (7th Cir. 2019) (holding that *Rooker-Feldman* barred jurisdiction where a finding for plaintiffs would necessarily "call into question the state court's judgment")). In other words, Hartsfield cannot avoid *Rooker-Feldman* by attempting to recast his claims against the state court judgment as one for damages for violation of his civil rights. *See, e.g.*, *Wallis v. Fifth Third Bank*, 443 F. App'x 202, 204–05 (7th Cir. 2011) ("[Plaintiff] cannot circumvent the *Rooker–Feldman* doctrine by recasting a request for the district court to review state-court rulings as a complaint about civil rights, due process, conspiracy, or RICO violations."); *Faulkner v. Loftus*, No. 16 CV 02432, 2018 WL 11181980, at *4 (N.D. Ill. Mar. 30, 2018) ("A plaintiff also may not circumvent the *Rooker-Feldman* bar just by alleging fraud in connection with the underlying state action.") (citing *Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015) ("[F]raud (no matter how described) does not permit a federal district court to set aside a state court's judgment in a civil suit.").

Hartsfield's arguments in his opposition brief do not persuade the Court to reach a different result. (*See* Dkt. 27.) Hartsfield's argument is difficult to follow, but it appears that he contends, at least in part, that *Rooker-Feldman* does not apply in this case because he was the defendant in the underlying state foreclosure proceeding, whereas he is now the plaintiff who initiated this civil rights action. (*Id.* at 1–2.) But Hartsfield is mistaken; all that matters for the purposes of *Rooker-*

*Feldman* is whether the party who lost in state court is seeking to challenge a state court judgment. It is immaterial whether the party is on the same side of the case as the underlying proceeding, nor is there any requirement that the case involve all the same parties from the underlying action. Hartsfield also suggests that *Rooker-Feldman* does not apply because of the violation to his due process rights in the state court proceeding, and he contends that it is improper for Shellpoint to ignore his claims and simply seek dismissal on jurisdictional grounds. But again, *Rooker-Feldman* serves as a threshold procedural bar to cases that seek to challenge a state court judgment, and neither Shellpoint, nor the Court, can reach the merits of Hartsfield's claims if the Court lacks jurisdiction in the first place. And Hartsfield may not avoid this by casting his claims in terms of fraud or violation of his civil rights. What matters is not the technical way in which Hartsfield describes his claims, but whether the relief he seeks would require overturning, or calling into question, a state court judgment. Hartsfield's claim about the violation of his due process rights is a direct assault on the state court judgment, as a verdict in his favor would require vacatur of the state court foreclosure. This federal district court has no authority to hear such a claim. Instead, Hartsfield's proper means for raising such a challenge was in the state court appellate system.

This brings the Court to the second step of the *Rooker-Feldman* inquiry mentioned above: whether Hartsfield had an opertuntity to meaningfully pursue his claims in the state court. None of Hartsfield's filings suggest that he did not have a full opportunity to pursue his claims of forgery in the state proceedings, or that he could not have appealed the foreclosure judgment in state court. Thus, the Court cannot conclude that Hartsfield lacked an opportunity to pursue his claims in the state court system such that *Rooker-Feldman* does not apply.

The Court thus finds that Hartsfield's claims in this case amount to an attack on the state court foreclosure judgment, and are barred under the *Rooker-Feldman* doctrine. Shellpoint's

motion to dismiss must therefore be granted on the grounds that the Court lacks subject matter jurisdiction.

A final issue is what the Court should do with Hartsfield's claims against the other defendants, Alverez, Herrera, and McCalla, who have not yet appeared in this action. As noted above, it appears based on the Court's review of the docket that these defendants have all been served with summons and the Amended Complaint, and yet none has appeared or responded to the complaint. (Dkt. 20.) The Court can only speculate as to why none of these defendants have appeared—perhaps service was defective in some way that is not apparent on the face of the docket, or maybe the defendants were intentionally seeking to save costs by letting Shellpoint argue for dismissal on its own.

Whatever the reason, the Court finds that it would be inefficient and a waste of judicial resources to all for Hartsfield's case to proceed against the other defendants. The same *Rooker-Feldman* issues that require dismissal against Shellpoint apply equally against the other parties; Hartsfield does not point to any specific independent conduct by any of the non-appearing defendants giving rise to any cause of action, but instead merely alleges the same general denial of his due process rights in the foreclosure proceeding. Dismissal is therefore warranted as to the other defendants for the same reasons stated above, that is, because Hartsfield's claims against those parties either seek direct reversal of the state court judgment, or are inextricably intertwined with the state court judgment. While these other parties have not appeared or moved for dismissal, this Court has the inherent authority to review and dismiss a plaintiff's complaint if it finds the case is obviously frivolous or defective. *See Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir.2003) ("District judges have ample authority to dismiss frivolous or transparently defective suits spontaneously, and thus save everyone time and legal expense."); *Mallard v. U.S. Dist. Ct.*, 490

U.S. 296, 307–08 (1989) (noting that the *in forma pauperis* statute "authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision."). It is particularly appropriate for district courts to use this inherent authority to dismiss cases for lack of subject matter jurisdiction, as courts must always consider jurisdiction as the "first question" in every case, and are required to dismiss a lawsuit if such jurisdiction is lacking. *See Jakupovic*, 850 F.3d at 902 (considering sua sponte whether *Rooker-Feldman* barred plaintiff's claims). Therefore, while it would have been more appropriate for the other parties to appear and argue for dismissal on their own behalf, the fact remains that dismissal of the claims against them is also warranted under *Rooker-Feldman*.

In sum, the Court finds that the entire Amended Complaint must be dismissed, as to all Defendants, based on a lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. The Court understands that Hartsfield is frustrated by the results of the state court foreclosure action, and the Court takes no position on the merits of his claims of forgery or violation of his due process rights. But this federal district court does not have authority to reverse state court foreclosure judgments. Instead, Hartsfield's claims must be pursued in state court. The case will therefore be dismissed.

**Conclusion**

For the forgoing reasons, Shellpoint's motion to dismiss is granted, and the Court dismisses the entire action based on a lack of subject matter jurisdiction.

ENTERED: 3/21/24

Nancy L. Maldonado
United States District Court Judge